**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BENCHMARK INVESTMENTS, INC.

                          Plaintiff,

            v.

YUNHONG CTI LTD.,

                          Defendant.

No. 1:21-cv-02279-JPC-OTW

**BENCHMARK INVESTMENTS, INC.'S MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS AMENDED COUNTERCLAIMS**

**GUSRAE KAPLAN NUSBAUM PLLC**

Ryan J. Whalen
Kari Parks
120 Wall Street
New York, New York 10005
(212) 269-1400
rwhalen@gusraekaplan.com
kparks@gusraekaplan.com

*Counsel for Plaintiff–Counterclaim*
*Defendant Benchmark Investments, Inc.*

# TABLE OF CONTENTS

**TABLE OF CONTENTS**                                                                        **i**

**TABLE OF AUTHORITIES**                                                                     **ii**

**PRELIMINARY STATEMENT**                                                                    **1**

**BACKGROUND**                                                                               **3**

   I.   Benchmark Sued Yunhong for Breaching the Parties' "Exclusive" Placement
Agreement                                                                                    3

   II.   Yunhong's Counterclaim Blames Non-Party Abraham Cinta for the Breakdown
Between the Parties                                                                          5

   III.  At All Relevant Times, Mr. Cinta's Client Owned and Controlled Yunhong        8

**LEGAL STANDARD**                                                                           **9**

**ARGUMENT**                                                                                 **10**

   I.   Benchmark's Alleged Failure to Deliver Appropriate Investors Did Not Breach
the Placement Agreement                                                                      10
      A.   Yunhong Does Not Plead Its Own Contractual Performance                   11
      B.   Yunhong Does Not Plead Bad Faith Conduct that Could Breach the "Best
Efforts" Clause                                                                              12

   II.   Yunhong's Implied Covenant Theory Duplicates Its Contract Claim               13

   III.  Benchmark, a Mere Placement Agent, had No Fiduciary Duty to Yunhong          14

   IV.  Yunhong Fails to Allege Any Element of Its Fraudulent Inducement and
Negligent Misrepresentation Claims                                                           16
      A.   Yunhong Fails to Allege Any Wrongful Statements or Omissions Made by
Benchmark                                                                                    17
      B.   Yunhong Fails to Allege Materiality, Damages, or a "Special Relationship"   20

   V.   Yunhong's Nonexistent Harm Also Precludes Its Unjust Enrichment Claim          22

   VI.  The Court Should Dismiss Yunhong's Futile Counterclaims with Prejudice        24

**CONCLUSION**                                                                               **25**

## TABLE OF AUTHORITIES

### Cases

651 Bay Street, LLC v. Discenza, 189 A.D.3d 952 (1st Dep't 2020)    21

Aetna Cas. & Surety Co. v. Aniero Concrete Co., 404 F.3d 566 (2d Cir. 2005)    22

Amusement Indus., Inc. v. Stern, 768 F. Supp. 2d 758 (S.D.N.Y. 2011) (Kaplan, J.)    9

Ashcroft v. Iqbal, 556 U.S. 662 (2009)    9, 10

Asian Vegetable Research & Dev. Ctr. v. Inst. of Int'l Educ., 944 F. Supp. 1169 (S.D.N.Y.
1996) (Sweet, J.)    14

Barnes v. United States, 204 F. App'x 918 (2d Cir. 2006)    24

Barron Partners, LP v. LAB123, Inc., 593 F. Supp. 2d 667 (S.D.N.Y. 2009) (Rakoff, J.)    20

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)    9

Bigio v. Coca-Cola Co., 675 F.3d 163 (2d Cir. 2012)    18

Bissell v. Merrill Lynch & Co., Inc., 937 F. Supp. 237 (S.D.N.Y. 1996) (Schwartz, J.), aff'd,
157 F.3d 138 (2d Cir. 1998)    15

BNP Paribas Mortg. Corp. v. Bank of Am., N.A., 866 F. Supp. 2d 257 (S.D.N.Y. 2012)
(Sweet, J.)    15

Chambers v. Time Warner, Inc., 282 F.3d 147 (2d Cir. 2002)    9

Comfort Inn Oceanside v. Hertz Corp., No. 11-cv-1534 (JG) (JMA), 2011 WL 5238658,
(E.D.N.Y. Nov. 1, 2011) (Gleeson, J.)    11

Connaughton v. Chipotle Mexican Grill, Inc., 135 A.D.3d 535 (1st Dep't 2016), aff'd, 29
N.Y.3d 137 (2017)    22

Cooper v. Parsky, 140 F.3d 433 (2d Cir. 1998)    15

Corsello v. Verizon New York, Inc., 18 N.Y.2d 777 (2012)    23

Crotona 1967 Corp. v. Vidu Bros. Corp., 925 F. Supp. 2d 298 (E.D.N.Y. 2013) (Gold, M.J.)
   21

Cruz v. FXDirectDealer, LLC, 720 F.3d 115 (2d Cir. 2013)    12

Cuoco v. Moritsugu, 222 F.3d 99 (2d Cir. 2000)    24, 25

<u>Davidowitz v. Partridge</u>, No. 08 CV 6962(NRB), 2010 WL 5186803 (S.D.N.Y. Dec. 7, 2010) (Buchwald, J.) ........................................................................................................ 16

<u>First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd.</u>, 52 F. Supp. 3d 625 (S.D.N.Y. 2014) (Sullivan, J.) ............................................................................................................................. 22

<u>Fletcher v. Atex, Inc.</u>, 68 F.3d 1451 (2d Cir. 1995) ........................................................................ 18

<u>Global Crossing Bandwidth, Inc. v. PNG Telecomms., Inc.</u>, No. 06 Civ. 6415T, 2007 WL 174094 (W.D.N.Y. Jan. 22, 2007) (Telesca, J.) ................................................................. 11

<u>Harris v. Provident Life and Acc. Ins. Co.</u>, 310 F.3d 73 (2d Cir. 2002) ...................................... 13

<u>Harsco Corp. v. Segui</u>, 91 F.3d 337 (2d Cir. 1996) ........................................................................ 10

<u>Hydro Invs., Inc. v. Trafalgar Power Inc.</u>, 227 F.3d 8 (2d Cir. 2000) .......................................... 17

<u>Icebox-Scoops, Inc. v. Finanz St. Honoré, B.V.</u>, 676 F. Supp. 2d 100 (E.D.N.Y. 2009) (Gershon, J.) ................................................................................................................................ 9

<u>In re Chateaugay Corp.</u>, 198 B.R. 848 (Bankr. S.D.N.Y. 1996) (Keenan, J.), <u>aff'd</u>, 108 F.3d 1369 (2d Cir. 1997) ............................................................................................................... 12, 13

<u>In re First Central Fin. Corp.</u>, 377 F.3d 209 (2d Cir. 2004) ......................................................... 23

<u>Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.</u>, 157 F.3d 933 (2d Cir. 1998) ................................................................................................................................................ 15

<u>Johnson v. Nextel Commc'ns, Inc.</u>, 660 F.3d 131 (2d Cir. 2011) ................................................. 14

<u>Kavitz v. Int'l Bus. Mach. Corp.</u>, No. 09-Civ-5710, 2010 WL 11507447 (S.D.N.Y. Aug. 27, 2010) (McMahon, J.), <u>aff'd</u>, 458 F. App'x 18 (2d Cir. 2012) ................................................. 16

<u>Kortright Capital Partners LP v. Investcorp Investment Advisers Ltd.</u>, 392 F. Supp. 3d 382 (S.D.N.Y. 2019) (Pauley, J.) ............................................................................................ 21

<u>L-7 Designs, Inc. v. Old Navy, LLC</u>, 647 F.3d 419 (2d Cir. 2011) ................................................ 9

<u>Lama Holding Co. v. Smith Barney Inc.</u>, 88 N.Y.2d 413 (1996) ............................................. 21, 22

<u>Mandarin Trading Ltd. v. Wildenstein</u>, 16 N.Y.3d 173 (2011) ..................................................... 22

<u>Manhattan Motorcars, Inc.</u>, 244 F.R.D. 204 (S.D.N.Y. 2007) (Scheindlin, J.) ............................ 17

<u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184 (2d Cir. 2007) ............................................ 24

<u>Medina v. Bauer</u>, No. 02-CV-8837, 2004 WL 136636 (S.D.N.Y. Jan. 27, 2004) (Chin, J.) .... 17

<u>Miele v. Am. Tobacco Co.</u>, 2 A.D.3d 799 (2d Dep't 2003) ........................................................... 22

Monex Fin. Serv. Ltd. v. Nova Info. Sys., Inc., 657 F. Supp. 2d 447 (S.D.N.Y. 2009)

  (Pauley, J.)        12

Moss v. Morgan Stanley Inc., 719 F.2d 5 (2d Cir. 1983)       15

Nat'l Union Fire Ins. Co. v. Worley, 257 A.D.2d 228 (1st Dep't 1999)    20

New York Univ. v. Continental Ins. Co, 87 N.Y.2d 308 (1995)    20

New York Wheel Owner LLC v. Mammoet Holding B.V., 481 F. Supp. 3d 216 (S.D.N.Y.

  2020) (Furman, J.)      18, 19

Ochre LLC v. Rockwell Architecture Plan. & Design, P.C., No. 12 Civ. 2837 KBF, 2012

  WL 6082387 (S.D.N.Y. Dec. 3, 2012), aff'd, 530 F. App'x 19 (2d Cir. 2013)    17

Paramount Film Distrib. Corp. v. State of New York, 30 N.Y.2d 415 (1972)    22

Pasternak v. Dow Kim, 961 F. Supp. 2d 593 (S.D.N.Y. 2013) (Chin, J.)    21

Schwartzco Enters. LLC v. TMH Mgmt., LLC, 60 Supp. 3d 331 (E.D.N.Y. 2014) (Spatt, J.)

      16

Seippel v. Jenkins & Gilchrist, P.C., 341 F. Supp. 2d 363 (S.D.N.Y. 2004) (Scheindlin, J.) 15

Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC, 842 F. Supp. 2d 502 (S.D.N.Y. 2012)

  (Swain, J.)    12, 13, 17, 22

Spinelli v. Nat'l Football League, 903 F.3d 185 (2d Cir. 2018)    14

State Street Global Advisors Trust Company v. Visbal, 431 F. Supp. 3d 322 (S.D.N.Y.

  2020) (Woods, J.)    20

United States v. Weaver, 860 F.3d 90 (2d Cir. 2017)    20

Washington v. Kellwood Co., No. 05 Civ. 10034 (DAB), 2009 WL 855652 (S.D.N.Y. Mar.

  24, 2009) (Batts, J.)    14

TREATISES

Restatement (Third) of Agency § 7.03, comment d(3) (2006)    19

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff–Counterclaim Defendant Benchmark Investments, Inc. ("**Benchmark**") respectfully submits this memorandum of law in support of its Rule 12(b)(6) "**Motion**" to dismiss, with prejudice, the Amended Counterclaims filed by Defendant–Counterclaim Plaintiff Yunhong CTI Ltd. ("**Yunhong**" or the "**Company**" and with Plaintiff, the "**Parties**"). See Dkt. 30, First Amended Answer to Complaint, Affirmative Defenses, and Counterclaims (Aug. 31, 2021) (the "**Counterclaim**" or "**Am. Countercl.**").

## PRELIMINARY STATEMENT

In June 2020, the Parties executed a Placement Agreement in which Yunhong agreed that Benchmark would act as its "exclusive placement agent" for one year. See Dkt. 1-1, Placement Agreement dated June 11, 2020 at 1, § B, Dkt. 1-1 (Mar. 26, 2021) ("**Placement Agreement**"). By January 2021, Yunhong had offered securities at least twice without involving Benchmark at all; accordingly, Benchmark sued Yunhong for breach of contract and declaratory relief in March 2021. See generally Dkt. 1, Complaint (Mar. 16, 2021) ("**Compl.**" or the "**Complaint**").

Yunhong responded by counterclaiming for fraudulent inducement, negligent misrepresentation, breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. See generally Dkt. 19, Counterclaim (June 25, 2021) (the "**Original Counterclaim**"). Yunhong concedes that it never consummated a securities offering with Benchmark, but claims that Benchmark never "provide[d] any viable purchasers for [Yunhong's] securities or provide any suitable investors." Am. Countercl. ¶ 20. After Benchmark filed a pre-motion letter explaining the propriety of dismissing

1

the Original Counterclaim pursuant to Rule 12(c), Yunhong filed the operative Amended Counterclaim. See Dkt. 23, Letter Motion for Leave to File 12(c) Motion (July 19, 2021); Dkt. 24, Letter Response to Motion (July 22, 2021).

Yet the Amended Counterclaim fails to state any claim for the exact same reasons that its Original Counterclaim failed: (1) Yunhong attempts to hold Benchmark responsible for the acts of Yunhong's own "advisor," Abraham Cinta, without pleading facts demonstrating how or why Mr. Cinta could have bound Benchmark; (2) the Placement Agreement's explicit "best efforts" and "no fiduciary duty" terms preclude Yunhong's fraudulent inducement, negligent misrepresentation, breach of contract, and breach of implied covenant claims; (3) Yunhong fails to allege any material misstatement or omission, and (4) Yunhong's failure and inability to allege any damages whatsoever — indeed, it has never paid Benchmark any money at all — independently bars its unjust enrichment, fraudulent inducement, and negligent misrepresentation claims. See Am. Countercl. ¶¶ 41-60, 70–83. The Amended Counterclaim's new fiduciary duty claim likewise fails due to the nonexistence of a fiduciary duty or damages. See id. ¶¶ 65–69.

For the reasons set forth herein, the Court should dismiss the Amended Counterclaim with prejudice.

## BACKGROUND

I.    **Benchmark Sued Yunhong for Breaching the Parties' "Exclusive" Placement Agreement**

Benchmark is a New York City-based financial services company that provides placement and underwriting services to securities issuers. <u>See generally</u> Placement Agreement; <u>see also</u> Am. Countercl. ¶ 13. Kingswood Capital Markets ("**Kingswood**") is a division of Benchmark and worked with Defendant Yunhong. Am. Countercl. ¶¶ 13–15.

On June 12, 2020, Benchmark and Yunhong executed the one-year Placement Agreement, in which Benchmark agreed that it would use "reasonable best efforts" to offer and place Yunhong's securities for one year:

> This letter[] constitutes the Agreement between Yunhong [ . . . ] and Benchmark [ . . . ] that Kingswood shall serve as the **exclusive placement agent** (the "**Services**") for the Company, on a reasonable best efforts basis, in connection with the proposed offer and placement (the "**Offering**") [ . . . ] **The Company expressly acknowledges and agrees that the execution of this Agreement** does not constitute a commitment by Kingswood to purchase the Securities and **does not ensure the successful placement of the Securities or any portion thereof or the success of Kingswood with respect to securing any other financing on behalf of the Company**. [ . . . ]
>
> The term (the "**Term**") of Kingswood's engagement for the Offering will begin on the date hereof and end on the one-year anniversary of the date of this Agreement.

Placement Agreement at 1 (emphasis added); <u>id.</u> § 3(B) (term). In exchange for Benchmark's services, Yunhong agreed to pay "a cash placement fee (the "**Placement Agent's Closing Fee**") equal to seven percent (7%) of the aggregate purchase price paid by each purchaser (the "**Purchaser**" or "**Purchasers**") of Securities," as well as "warrants

equal to 5% of the aggregate number of shares of common stock placed in each Offering."

Id. §§ A(1), (2). Yunhong also agreed that Kingwood's duties to the Company were limited and contractual:

> Limitation of Engagement to the Company. The Company acknowledges that [ . . . ] Kingswood is providing services hereunder as an independent contractor (**and not in any fiduciary or agency capacity**) [ . . . ] **Kingswood shall not have the authority to make any commitment binding on the Company."**

Id. § G (emphasis added).

While Benchmark arranged for multiple potential financings for Yunhong, the Company rejected all of them. Compl. ¶¶ 5–6; accord Am. Countercl. ¶¶ 20, 25–34.

At least twice during the Placement Agreement's one-year term, Yunhong bypassed Benchmark to issue securities, selling $3 million of convertible stock to non-parties Shuai Wang (the "**November 2020 Offering**") and LF International Pte. Ltd. ("**LF**") (the "**January 2021 Offering**"). Id. ¶¶ 7, 8, 12.

Because Yunhong solicited, negotiated, and completed both the November 2020 and January 2021 Offerings away from Benchmark and during the Placement Agreement's one-year term, Benchmark sued for breach of contract. See generally Compl. Yunhong's circumvention cost Benchmark no less than $210,000 in commissions, plus warrants for 150,000 shares of Yunhong common stock at an exercise price of $0.01. See Placement Agreement ¶¶ A.1 and A.2.

## II. Yunhong's Counterclaim Blames Non-Party Abraham Cinta for the Breakdown Between the Parties

Instead of analyzing the Placement Agreement's duties and Benchmark's own acts or omissions, the Counterclaim argues that Benchmark should be held responsible for the supposedly-wrongful conduct of Yunhong's own "financial advisor," Abraham Cinta. See generally Am. Countercl.

Yunhong alleges that in "late 2019," it met non-party Yubao Li, who, "through his investment advisors, Abraham Cinta and [Jesús] Hoyos" invested in Yunhong on or about January 3, 2020; it does not explain what "through his investment advisors" means. Id. ¶¶ 10–11. "[A]s part of that investment, CTI was renamed [Yunhong] CTI [and] Mr. Li was named Chairman of the Board." Id. ¶ 11; accord Press Release, CTI Industries Announces Corporate Name Change to Yunhong CTI Ltd. (Mar. 16, 2020) ("**Press Release**").

Yunhong claims that after Mr. Li invested in Yunhong, "Mr. Cinta informed [Yunhong] that he and Mr. Li had previously worked with [Benchmark] and believed that [Benchmark] could identify and secure investors interested in purchasing [Yunhong] securities." Id. ¶ 13. Yunhong alleges that "Mr. Hoyos and Mr. Cinta began negotiating terms on which Kingswood would identify and secure such purchasers," and eventually sent Yunhong the draft Placement Agreement, which, on Messrs. Hoyos's and Cinta's "urging," the Company executed. Id. ¶¶ 13, 15, 17.

Yunhong also alleges that within a month of executing the Placement Agreement, it considered, but ultimately declined to terminate the Contract in order to accept a $3

million investment from a third party. Id. ¶¶ 21–26. In other words, Yunhong explicitly pleads that as early as July 2020, it understood that circumventing Benchmark would breach the Placement Agreement. Id.

But sometime after July 23, 2020, claims Yunhong, Mr. Cinta "disclosed to Mr. Cesario that Mr. Cinta was also an owner of Kingswood." Id. ¶ 35. Yunhong claims that "Mr. Cinta's [alleged] conflict of interest was not disclosed at the time of the execution of the purported Placement Agreement, and still has not been formally disclosed, by Kingswood or Benchmark to [Yunhong]." Id. ¶ 38. Yunhong concludes that "Mr. Cinta's failure to disclose this conflict of interest was a material misrepresentation and / or omission of material fact," and sues his alleged company, Arc Capital, for breach of fiduciary duty. Id. ¶¶ 61–64; see also id. ¶ 11 (alleging that Mr. Cinta was "on the management team of Arc Capital").

While the 83-paragraph Amended Counterclaim pleads dozens of facts regarding Mr. Cinta's alleged misdeeds, it pleads far fewer regarding Benchmark's own conduct:

1. "At no time did [Benchmark] provide any viable purchasers for [Yunhong's] securities or provide any suitable investors for [Yunhong]," id. ¶ 20; accord id. ¶¶ 74, 78;
2. Between July 2 and 16, 2020, Benchmark "encouraged an S-1 offering," id. ¶ 25; accord ¶ 79;
3. On July 23, 2020, Benchmark executed a second "purported agreement" with Yunhong that was not "definitive" with Yunhong, id. ¶¶ 28, 34;
4. Benchmark did not tell Yunhong that Mr. Cinta was "an owner," id. ¶ 37; accord id. ¶¶ 50, 57;
5. Benchmark "knew that Mr. Cinta could not negotiate on behalf of [Yunhong] with impartiality," id. ¶ 56;
6. But "[a]t all relevant times, Benchmark knew that Mr. Cinta was an owner and / or agent of [Benchmark] and there existed a material conflict of interest in him negotiating any agreement on behalf of

[Yunhong] whereby [Benchmark] would act on [Yunhong's] behalf in good faith," <u>id.</u> ¶¶ 46, 56; and

7. Benchmark "represent[ed] that [it was] acting in good faith and did not have a conflict of interest in engaging with [Yunhong]," <u>id.</u> ¶¶ 50, 59; <u>accord</u> <u>id.</u> ¶ 74.

Yunhong does not identify any money or other value it has provided to Benchmark, nor does it plead any other facts illustrating the damage that Benchmark supposedly inflicted upon the Company. <u>See generally</u> Countercl.

Yunhong also fails to substantiate its accusation that Mr. Cinta was Benchmark's "owner" or "agent," besides claiming that he "disclosed to Mr. Cesario that Mr. Cinta was also an owner of Kingswood." <u>See</u> <u>id.</u> ¶ 35. Indeed, Yunhong explicitly pleads that Mr. Cinta advised Yunhong "on behalf of Mr. Li." <u>See</u> <u>id.</u> ¶¶ 11–12 (emphasis added).

Yet Yunhong concludes that "Mr. Cinta's, **and thus [Benchmark's]**," alleged misdeeds caused it harm, and accordingly brings six claims against Benchmark: fraudulent inducement, negligent misrepresentation, breach of fiduciary duty, breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. <u>Id.</u> ¶¶ 41–60, 53 (emphasis added), 65–83.

### III.    At All Relevant Times, Mr. Cinta's Client Owned and Controlled Yunhong

The Counterclaim neglects to mention that Mr. Li's January 2020 "investment" was his purchase of approximately 59.6% of the Company. See Schedule 13D (Apr. 13, 2020). In purchasing majority control of Yunhong, Mr. Li not only renamed the Company, but also gained the right to and did name three directors to the board: himself, Wan Zhang, and Yaping Zhang, and soon after became Board Chair. Form 10-K, Yunhong CTI Ltd. Annual report for year ending December 31, 2020 at F-16 (Apr. 16, 2021) ("**2020 10-K**"); accord Lf International Pte. Ltd., Form SC 13D/A [Amended] – General statement of acquisition of Beneficial ownership (June 5, 2020); Press Release, Yunhong CTI Ltd., Yunhong CTI Ltd. Announces Changes to Board of Directors (June 10, 2020).

Moreover, while the Counterclaim mostly edited out the Original's allegations regarding Frank Cesario, Yunhong's own SEC filings state that Mr. Cesario resigned from his position as the Company's Chief Financial Officer in June 2020, and from President and CEO in September 2020. 2020 10-K at 15. Those filings further provide that since Mr. Cesario's resignation, Mr. Li has been the Company's President and CEO. Id. at 14; compare also Countercl. and Am. Countercl.

In other words, at the time that the Parties negotiated and executed the Placement Agreement, Mr. Li was not just another minority investor: he owned and controlled the Company as its majority shareholder and Board Chair. During the November 2020 and January 2021 Offerings—and when Yunhong filed both its original and instant Counterclaims—Mr. Li was not only its majority owner and Board Chair, but also its President and CEO.

8

## LEGAL STANDARD

Rule 12(b)(6) requires dismissal of any counterclaim supported only with "[n]aked assertions" of illegal activity, "devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "This principle applies with even greater force" where Rule 9(b) governs, including with both fraudulent inducement and negligent misrepresentation claims. Amusement Indus., Inc. v. Stern, 768 F. Supp. 2d 758, 770 (S.D.N.Y. 2011) (Kaplan, J.) (quoting First Nationwide Bank, 27 F.3d at 771; Icebox-Scoops, Inc. v. Finanz St. Honoré, B.V., 676 F. Supp. 2d 100, 110 (E.D.N.Y. 2009) (Gershon, J.). To decide this Motion, the Court may consider any documents incorporated by reference or integral to the pleadings, and "any matter of which the Court can take judicial notice for the factual background of the case," including Securities and Exchange Commission ("**SEC**") filings. L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

## ARGUMENT

Yunhong fails to allege the vast majority of the elements necessary to state any of its counterclaims. See generally Am. Countercl. Because Yunhong's "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" cannot "unlock the doors of discovery," the Court should dismiss the Counterclaim with prejudice. See Iqbal, 556 U.S. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

### I.  Benchmark's Alleged Failure to Deliver Appropriate Investors Did Not Breach the Placement Agreement

Yunhong's breach-of-contract claim alleges neither its own performance nor damages nor Benchmark's breach. See, e.g., Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996) (elements are existence of enforceable contract, plaintiff's performance, defendant's breach, and damages). Yunhong claims:

> [Benchmark] breached its obligations under the purported Placement Agreement by, among other things, failing to make 'reasonable best effort[s]' to place [Yunhong] securities and secure other financing on behalf of [Yunhong]. Among other things, Kingwood failed to introduce any meaningful investors to [Yunhong] and failed to disclose its blatant conflict of interest.

Am. Countercl. ¶¶ 73–74. The Counterclaim does not specify what any of the "other things" are, let alone what provisions of the Placement Agreement that those "other things" breached. See generally id.

### A. Yunhong Does Not Plead Its Own Contractual Performance

"A claimant's failure to plead the performance of its own contractual obligations is fatal to a breach of contract claim even if the other requisite elements are properly pleaded." Comfort Inn Oceanside v. Hertz Corp., No. 11-cv-1534 (JG) (JMA), 2011 WL 5238658, at *3 (E.D.N.Y. Nov. 1, 2011) (Gleeson, J.) (collecting cases). Yet Yunhong does not allege a single duty of its own under the Placement Agreement, let alone its performance thereof. Compare generally Countercl. and Placement Agreement (imposing duties on Yunhong, including one-year exclusivity term, indemnity, duties to pay expenses and provide information, and transaction-based fees).

Because Yunhong "does not expressly allege, even in conclusory fashion," its own Placement Agreement performance, the Court must dismiss its contract claim. See Comfort Inn, 2011 WL 5238658, at *4 (citing Global Crossing Bandwidth, Inc. v. PNG Telecomms., Inc., No. 06 Civ. 6415T, 2007 WL 174094, at *2 (W.D.N.Y. Jan. 22, 2007) (Telesca, J.)); accord Global Crossing, 2007 WL 174094, at *2 ("While a plaintiff's failure to plead its own performance may be a technical defect, it is nonetheless a defect, and accordingly defendant's motion to dismiss this cause of action is granted.").

### B. Yunhong Does Not Plead Bad Faith Conduct that Could Breach the "Best Efforts" Clause

Yunhong also does not plead facts showing that Benchmark "fail[ed] to make 'reasonable best efforts' to place [Yunhong] securities and secure other financing" <u>See</u> Am. Countercl. ¶¶ 20, 74.

"A 'best efforts' clause imposes an obligation to act with good faith in light of one's capabilities." <u>Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC</u>, 842 F. Supp. 2d 502, 511 (S.D.N.Y. 2012) (Swain, J.) (quoting <u>Monex Fin. Serv. Ltd. v. Nova Info. Sys., Inc.</u>, 657 F. Supp. 2d 447, 454 (S.D.N.Y. 2009) (Pauley, J.)); <u>accord</u> <u>Cruz v. FXDirectDealer, LLC</u>, 720 F.3d 115, 124 (2d Cir. 2013) (same). But "[e]ven in the face of a best efforts clause," a party may "give reasonable consideration to its own interests in determining an appropriate course of action to reach the desired result." <u>In re Chateaugay Corp.</u>, 198 B.R. 848, 854 (Bankr. S.D.N.Y. 1996) (Keenan, J.), <u>aff'd</u>, 108 F.3d 1369 (2d Cir. 1997) (citations omitted) (a party may "exercise discretion, within its good faith business judgment, in devising a strategy for achieving its ultimate goal.").

For example, <u>Soroof's</u> defendant–counterclaim plaintiff sued under a contractual clause that required plaintiff–counterclaim defendant GEFCS to use its "best efforts to sell advertise and promote" fuel cells in Saudi Arabia and satisfy any "firm purchase orders." 842 F. Supp. 2d at 508. Judge Batts rejected Soroof's argument that the contract required GEFCS to actually supply a "sufficient quantity" of fuel cells to distribute throughout Saudi Arabia, noting that "the best efforts clause imposed no obligation to

provide **any** cells, much less a quantity sufficient to distribute throughout Saudi Arabia." Id. at 511 (emphasis in original).

As in Soroof, here, Yunhong identifies two specific undesirable outcomes—Benchmark's "fail[ure] to introduce any meaningful investors" and "pursu[it of] an S-1 offering"—to argue that Benchmark breached the "best efforts" clause. See Countercl. ¶ 36. But without more, neither allegation suggests that Benchmark failed to use "reasonable means" to place Yunhong's securities, let alone that Benchmark failed to use its "good faith business judgment [to] devis[e] a strategy for achieving its ultimate goal." See Chateaugay, 198 B.R. at 854.

## II.   Yunhong's Implied Covenant Theory Duplicates Its Contract Claim

New York "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Harris v. Provident Life and Acc. Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002).

Yunhong's implied covenant claim violates this hornbook law, relying on the exact same "fact" that allegedly breaches the Placement Agreement's explicit terms: that Benchmark "fail[ed] to make 'reasonable best efforts' to place [Yunhong] securities and secure other financing on behalf of [Yunhong]." See Am. Countercl. ¶ 78; compare also id. ¶ 80 (alleging that Benchmark breached the implied covenant because "it did not make 'reasonable best effort[s]' to place [Yunhong] securities and secure other financing on behalf of [Yunhong]") and id. ¶ 73 (alleging that Benchmark breached the Placement

Agreement's explicit terms by "failing to make 'reasonable best effort[s] to place [Yunhong] securities and secure other financing on behalf of [Yunhong].").

The Court should dismiss Yunhong's implied covenant claim. See, e.g., Washington v. Kellwood Co., No. 05 Civ. 10034 (DAB), 2009 WL 855652, at *6 (S.D.N.Y. Mar. 24, 2009) (Batts, J.) (dismissing implied covenant claim that "merely stated[,] 'Defendant's breach of the terms of each agreement referenced above and its refusal to use its best efforts, or even reasonable efforts, to generate profits for Plaintiffs' products is a breach of the covenant of good faith and fair dealing.'") (alterations omitted).

## III.   Benchmark, a Mere Placement Agent, had No Fiduciary Duty to Yunhong

Yunhong also fails to plead the existence of a fiduciary duty, let alone resulting damages from its alleged breach. See Spinelli v. Nat'l Football League, 903 F.3d 185, 207 (2d Cir. 2018) (citing Johnson v. Nextel Commc'ns, Inc., 660 F.3d 131, 138 (2d Cir. 2011)) (elements are existence of fiduciary duty, knowing breach, and damages).

Because the Placement Agreement "clearly and unambiguously disclaims a fiduciary relationship," the Court should dismiss this counterclaim. See Asian Vegetable Research & Dev. Ctr. v. Inst. of Int'l Educ., 944 F. Supp. 1169, 1178 (S.D.N.Y. 1996) (Sweet, J.) (holding that no fiduciary relationship existed where agreement "clearly and unambiguously disclaim[ed] a fiduciary relationship."). The Placement Agreement explicitly disclaims any such relationship:

> Limitation of Engagement to the Company. The Company acknowledges that [ . . . ] Kingswood is providing services hereunder as an independent contractor (**and not in any fiduciary or agency capacity**) [ . . . ] **Kingswood shall not have the authority to make any commitment binding on the Company."**

14

Placement Agreement § G (emphasis added).

New York courts consistently hold that fiduciary duty disclaimers like this one "preclude the finding of a fiduciary or other special relationship, absent special circumstances." BNP Paribas Mortg. Corp. v. Bank of Am., N.A., 866 F. Supp. 2d 257, 259 (S.D.N.Y. 2012) (Sweet, J.) (citing Cooper v. Parsky, 140 F.3d 433, 439 (2d Cir. 1998); Seippel v. Jenkins & Gilchrist, P.C., 341 F. Supp. 2d 363, 381–82 (S.D.N.Y. 2004) (Scheindlin, J.)).

This is equally true where plaintiffs claim that placement agents like Benchmark owe them fiduciary duties. See, e.g., BNP Paribas, 866 F. Supp. 2d at 270–71 (rejecting argument that broker–dealer defendants each owed a fiduciary duty "by virtue of its role as a broker and dealer of securities, and as a note dealer and placement agent") (citation omitted); accord Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 940 (2d Cir. 1998) ("There is no general fiduciary duty inherent in an ordinary broker / customer relationship."); Moss v. Morgan Stanley Inc., 719 F.2d 5, 15 (2d Cir. 1983) (holding that for 10b-5 purposes, no fiduciary duty exists for broker–dealers just because they are market professionals); Bissell v. Merrill Lynch & Co., Inc., 937 F. Supp. 237, 246 (S.D.N.Y. 1996) (Schwartz, J.), aff'd, 157 F.3d 138 (2d Cir. 1998) ("Under New York law, the mere existence of a broker–customer relationship is not proof of its fiduciary character.").

And even if Yunhong had alleged the existence of a fiduciary duty—which it has not—because it rests upon the exact same alleged wrongs and damages underlying

Yunhong's contract claim, the fiduciary duty claim cannot stand. See Kavitz v. Int'l Bus. Mach. Corp., No. 09-Civ-5710, 2010 WL 11507447, at *10 (S.D.N.Y. Aug. 27, 2010) (McMahon, J.), aff'd, 458 F. App'x 18 (2d Cir. 2012) ("Plaintiff's breach of fiduciary duty claim is nothing more than a breach of contract claim in other clothing. Therefore, it fails.").

### IV.   Yunhong Fails to Allege Any Element of Its Fraudulent Inducement and Negligent Misrepresentation Claims

Yunhong does not allege that Benchmark or any of its officers, directors, executives, or other employees made any misrepresentations to Yunhong. See generally Countercl. Instead, Yunhong pleads that Mr. Cinta acted as a double agent of sorts, purporting to represent Yunhong's interests while allegedly failing to disclose that he was an "owner and / or agent" of Benchmark. Am. Countercl. ¶¶ 45–46, 49–50, 56. Yunhong's failure to plead facts allowing the Court to hold Benchmark responsible for Mr. Cinta's alleged misrepresentations is enough to dismiss both Omission Claims.

To state plead fraudulent inducement, Yunhong allege (1) a material omission made by Benchmark (2) that induced Yunhong to sign the Placement Agreement, (3) scienter, (4) reliance, and (5) injury. Schwartzco Enters. LLC v. TMH Mgmt., LLC, 60 Supp. 3d 331, 344 (E.D.N.Y. 2014) (Spatt, J.) (quoting Davidowitz v. Partridge, No. 08 CV 6962(NRB), 2010 WL 5186803, at *7 (S.D.N.Y. Dec. 7, 2010) (Buchwald, J.)). To plead negligent misrepresentation, Yunhong must allege that (1) Benchmark "had a duty, as a result of a special relationship, to give correct information;" (2) Benchmark "made a false representation that [it] should have known was incorrect;" (3) "the information supplied

in the representation was known by [Benchmark] to be desired by [Yunhong] for a serious purpose;" (4) Yunhong "intended to rely and act upon it;" and (5) Yunhong reasonably relied on that misrepresentation (6) "to [its] detriment." Hydro Invs., Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000) (citations omitted).

Because Yunhong's fraudulent inducement and negligent misrepresentation claims (together, the "**Omission Claims**") are premised on a wrongful omission theory, the Counterclaim also must satisfy Rule 9(b) by alleging "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through fraud." Soroof, 842 F. Supp. 2d at 513 (quoting Manhattan Motorcars, Inc., 244 F.R.D. 204, 213 (S.D.N.Y. 2007) (Scheindlin, J.)).

### A. Yunhong Fails to Allege Any Wrongful Statements or Omissions Made by Benchmark

To state the obvious, a complaint must plead facts demonstrating each and every element of each and every claim alleged against any given defendant. Cf., e.g., Ochre LLC v. Rockwell Architecture Plan. & Design, P.C., No. 12 Civ. 2837 KBF, 2012 WL 6082387, at *6–7 (S.D.N.Y. Dec. 3, 2012), aff'd, 530 F. App'x 19 (2d Cir. 2013) ("The failure to isolate the key allegations against each defendant supports dismissal under the standards set forth in Twombly and Iqbal."); Medina v. Bauer, No. 02-CV-8837, 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) (Chin, J.) (dismissing complaint that "often refer[red] to the defendants collectively" but had specific allegation per defendant).

Yet Yunhong's fraudulent inducement and negligent misrepresentation claims plead no wrongful statements by Benchmark. See generally Am. Countercl. Instead, both argue that Mr. Cinta—whom Yunhong did not even sue—made misstatements to Yunhong. See Am. Countercl. ¶ 43 ("Mr. Cinta represented [ . . . ]"); id. ¶ 44 ("Mr. Cinta negotiated [ . . . ]"); id. ¶ 51 ("Mr. Cinta had a duty to disclose"); id. ¶ 55 ("Mr. Cinta falsely represented [ . . .]"). Indeed, Yunhong explicitly pleads that it sues Benchmark only because of Mr. Cinta's alleged misrepresentations. Id. ¶ 53 ("Mr. Cinta's, **and thus [Benchmark's]**, misrepresentations caused damages to [Yunhong] in an amount to be determined at trial, and this Court should issue an Order declaring the purported Placement Agreement void.").

But because Yunhong does not explain why Benchmark should be responsible for Mr. Cinta's statements, its Omission Claims fail. See New York Wheel Owner LLC v. Mammoet Holding B.V., 481 F. Supp. 3d 216, 234–36 (S.D.N.Y. 2020) (Furman, J.) (collecting cases) ("Needless to say, agency principles aside, a fraudulent inducement claim lies only where the defendant itself made the relevant misrepresentation or omission.").

Yunhong's vague claim that "[i]n August 2020, Mr. Cinta disclosed to Mr. Cesario that Mr. Cinta was also an owner of [Benchmark]" falls far short of showing that Mr. Cinta acted as Benchmark's agent. Compare id. ¶ 16 and, e.g., Bigio v. Coca-Cola Co., 675 F.3d 163, 175 (2d Cir. 2012) (citing Fletcher v. Atex, Inc., 68 F.3d 1451, 1455, 1461–62 (2d Cir. 1995)) ("A corporate parent's ownership interest in a subsidiary, standing alone, is insufficient to demonstrate the existence of an agency relationship."); Restatement

(Third) of Agency § 7.03, comment d(3) (2006) ("Common ownership of multiple entities does not create relationships of agency among them.").

Yunhong pleads no facts suggesting that Benchmark ever exercised control over Mr. Cinta or authorized him to act on Benchmark's behalf; it does not allege how much of Benchmark that Mr. Cinta allegedly owned, let alone that Mr. Cinta held that ownership interest during the negotiation and execution of the Placement Agreement; nor does it plead any other facts sufficient to demonstrate an agency relationship between Mr. Cinta and Benchmark. See, e.g., New York Wheel, 481 F. Supp. 3d at 235 (dismissing fraudulent inducement claim against certain defendants where plaintiff did not "plausibly plead that the representations at issue were made by, or on behalf of, [those] defendants, rather than on behalf of [a separate party] alone"); cf. Hale, 2021 WL 1163925, at *4 (dismissing complaint that "lack[ed] any facts permitting an inference that [defendant] exercised any control over [non-party wrongdoer]").

That inference would be particularly inappropriate here because Yunhong argues that Mr. Cinta acted on behalf of at least four separate interests in connection with this dispute: (1) Third-Party Defendant Arc Capital LLC; (2) non-party, but Yunhong CEO, Chair, and majority owner Yubao Li; (3) Defendant Yunhong; and (4) Plaintiff Benchmark. See generally Am. Countercl. Yunhong simply does not plead any facts suggesting that Mr. Cinta acted on Benchmark's behalf only when he was behaving wrongfully.

The Court should reject Yunhong's "conclusion[] of law [and] unwarranted deduction[] of fact" that Mr. Cinta acted as Benchmark's agent in the Transaction. See

Amusement Indus., 768 F. Supp. 2d at 760. If Yunhong has any claim here at all, it is not against Benchmark. Cf. Barron Partners, LP v. LAB123, Inc., 593 F. Supp. 2d 667, 674 (S.D.N.Y. 2009) (Rakoff, J.) (quoting Nat'l Union Fire Ins. Co. v. Worley, 257 A.D.2d 228, 233 (1st Dep't 1999) ("Fraud by a **third party** is not effective to vitiate contractual obligations.") (emphasis added).

### B. Yunhong Fails to Allege Materiality, Damages, or a "Special Relationship"

Even if it were proper to hold Benchmark responsible for Mr. Cinta's purported omissions, Yunhong's Omission Claims would still fail: the Counterclaim does not even attempt to plead facts suggesting that Mr. Cinta's alleged ownership of Benchmark was relevant, let alone material, to Yunhong's decision to execute the Placement Agreement. Compare generally Am. Countercl. and, e.g., State Street Global Advisors Trust Company v. Visbal, 431 F. Supp. 3d 322, 353 (S.D.N.Y. 2020) (Woods, J.) (quoting United States v. Weaver, 860 F.3d 90, 94 (2d Cir. 2017)) (inter alia, dismissing fraudulent inducement claims for lack of materiality and noting that "[a] false statement is material if the information would naturally tend to lead or is capable of leading a reasonable person to change his conduct.") (alterations omitted); Barron Partners, 593 F. Supp. 2d at 673 (holding that omission of principal's criminal history was immaterial where counterclaim–plaintiff "entered into the [contract] based on [counterclaim–plaintiff's] supposed expertise, and not based on any representations concerning—or understanding of—[counterclaim–plaintiff's integrity or character for truthfulness."); New York Univ. v. Continental Ins. Co, 87 N.Y.2d 308, 318 (1995) ("At the very threshold" plaintiff must

allege a material omission on which they relied that **induced** them to enter into a contract); 651 Bay Street, LLC v. Discenza, 189 A.D.3d 952, 954 (1st Dep't 2020) (citation omitted) (a material fact is one that "serves as an inducement for the contract"); cf. Crotona 1967 Corp. v. Vidu Bros. Corp., 925 F. Supp. 2d 298, 308 (E.D.N.Y. 2013) (Gold, M.J.) ("[T]o be considered material, misrepresentations must relate to the terms or conditions of the loan itself").

Yunhong also fails to allege the "out-of-pocket" damages necessary to state these claims, i.e., its "actual pecuniary loss sustained as the direct result of the wrong." See Kortright Capital Partners LP v. Investcorp Investment Advisers Ltd., 392 F. Supp. 3d 382, 398 (S.D.N.Y. 2019) (Pauley, J.) (citations omitted) ("In applying the out-of-pocket rule, courts have barred recovery for lost profits, loss of customers, and injury to business reputation for fraud and negligent misrepresentation claims."); Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996) ("actual pecuniary loss"); see also Pasternak v. Dow Kim, 961 F. Supp. 2d 593, 599 (S.D.N.Y. 2013) (Chin, J.) ("[T]he out-of-pocket rule applies to both the claim for fraud and the claim for negligent misrepresentation").

Finally, Yunhong fails to allege even one of the three scenarios giving rise to Benchmark's alleged duty to speak: (1) a fiduciary relationship between Yunhong and Benchmark, (2) under the "special facts" doctrine, that Benchmark had "superior knowledge, not readily available to" Yunhong, rendering the transaction "inherently unfair," or (3) that Benchmark "has made a partial or ambiguous statement, whose full meaning [would] only [have been] made clear after complete disclosure." First Hill Partners, LLC v. BlueCrest Cap. Mgmt. Ltd., 52 F. Supp. 3d 625, 636–37 (S.D.N.Y. 2014)

(Sullivan, J.) (citing <u>Aetna Cas. & Surety Co. v. Aniero Concrete Co.</u>, 404 F.3d 566, 582 (2d Cir. 2005); <u>Miele v. Am. Tobacco Co.</u>, 2 A.D.3d 799, 803 (2d Dep't 2003)).

Because fraudulent inducement and negligent misrepresentation damages "are calculated to compensate plaintiffs for what they lost because of the fraud, not for what they might have gained in the absence of fraud," the Court should dismiss these claims. <u>See</u> <u>Lama Holding</u>, 88 N.Y.2d at 421 (citation omitted) (dismissing fraud and negligent misrepresentation claims for, <u>inter alia</u>, failing to plead out-of-pocket damages, noting that "[d]amages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained"); <u>Connaughton v. Chipotle Mexican Grill, Inc.</u>, 135 A.D.3d 535, 539 (1st Dep't 2016), <u>aff'd</u>, 29 N.Y.3d 137 (2017) (holding that "plaintiff's failure to adequately plead actual damages is fatal to his cause of action sounding in fraudulent inducement").

## V.   Yunhong's Nonexistent Harm Also Precludes Its Unjust Enrichment Claim

To plead unjust enrichment, Yunhong must allege facts showing that (1) Benchmark was enriched, at (2) Yunhong's expense, and (3) "it is against equity and good conscience to permit [Benchmark] to retain what is sought to be recovered." <u>Mandarin Trading Ltd. v. Wildenstein</u>, 16 N.Y.3d 173, 182 (2011) (collecting cases). The "essential inquiry [ . . . ] is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." <u>Mandarin Trading</u>, 16 N.Y.3d at 182 (quoting <u>Paramount Film Distrib. Corp. v. State of New York</u>, 30 N.Y.2d 415, 421 (1972)).

As a threshold matter, the existence of a relevant contract between the Parties—here, the Placement Agreement—"**precludes** a finding of unjust enrichment." <u>See</u> <u>Soroof</u>,

842 F. Supp. 2d at 514 (citing <u>In re First Central Fin. Corp.</u>, 377 F.3d 209, 213 (2d Cir. 2004)) (emphasis in original). The inquiry ends there.

 Duplicative nature aside, the unjust enrichment claim also fails because Yunhong does not allege that it ever paid or otherwise "enriched" Benchmark, let alone to its own detriment. <u>Compare generally</u> Am. Countercl. <u>and, e.g.,</u> <u>Corsello v. Verizon New York, Inc.</u>, 18 N.Y.2d 777, 790 (2012) ("Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled."). Instead, the Company pleads that Benchmark "was unjustly enriched by fraudulent inducing [Yunhong] to enter into a contract with [Benchmark] and by paying certain sums to [Benchmark]." Countercl. ¶ 43.

 Nowhere does Yunhong plead what those "certain sums" might be, when it paid them, or to whom it paid them. <u>See generally</u> <u>id.</u> Yunhong also does not explain why it would have paid "certain sums" to Benchmark despite the fact that no payments were not due unless and until Benchmark actually closed a securities offering for the Company. <u>See</u> Placement Agreement §§ A(1), (2). This entirely vague and conclusory allegation cannot support any claim.

## VI.    The Court Should Dismiss Yunhong's Futile Counterclaims with Prejudice

Finally, because the Amended Counterclaim's problems are substantive and "would not be cured by better pleading," the Court should dismiss it with prejudice. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (denying request to replead because it would be futile).

Benchmark initiated this litigation against Yunhong in March 2021. See Dkt. 1 (Mar. 16, 2021). After receiving three extensions of time to file its answer, Yunhong filed the Original Counterclaim on June 25, 2021. See Dkt. 16 (June 17, 2021) (letter motion for extension of time); Dkt. 19, Countercl. (June 25, 2021). Despite having over three months to consider, draft, and file its response, Yunhong's five-count Counterclaim was 44 paragraphs long, with no facts supporting its largely-duplicative claims. See generally supra. After Benchmark requested a pre-Rule 12(c) motion conference, Yunhong filed the Amended Counterclaim, which failed to fix any of the problems raised in Benchmark's pre-motion letter, despite adding 39 more paragraphs. Compare generally Am. Countercl. and Dkt. 23, Letter Motion for Leave to File 12(c) Motion (July 19, 2021); see also Dkt. 33, Letter Motion for Leave to File Motion to Dismiss Amended Counterclaim (Sep. 20, 2021).

Yunhong's inability to muster any credible counterclaims is exactly why the Court should dismiss all of them with prejudice. See, e.g., McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) ("A district court has discretion to deny leave [to replead] for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."); Barnes v. United States, 204 F. App'x 918, 919 (2d Cir. 2006) (citing

<u>Cuoco</u>, 222 F.3d at 112) (court should deny leave to replead even *pro se* plaintiff's claims where plaintiff "suggests no new material he wishes to add to remedy substantive defects").

## CONCLUSION

At best, Yunhong's six counterclaims merely restate its defenses and affirmative defenses. They do not, however, state any actionable claim. Therefore, Benchmark respectfully requests that this Court dismiss the Amended Counterclaim with prejudice pursuant to Rule 12(b)(6).

Dated: October 22, 2021
     New York, New York

                          Respectfully submitted,

                          **GUSRAE KAPLAN NUSBAUM PLLC**

                          /s/ Ryan J. Whalen
                          Ryan J. Whalen
                          Kari Parks
                          120 Wall Street
                          New York, New York 10005
                          Telephone: (212) 269-1400
                          Fax: (212) 809-5449
                          rwhalen@gusraekaplan.com
                          kparks@gusraekaplan.com

                          *Counsel for Plaintiff–Counterclaim*
                          *Defendant Benchmark Investments, Inc.*